Opinion filed June 2, 2011

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00226-CR 

                                                    __________

 

                            MATTHEW
MARK HESLEP, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 19th District Court

                                                        McLennan
County, Texas

                                               Trial
Court Cause No. 2008-1531-C1 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Matthew Mark Heslep of indecency with a child.  The jury
assessed punishment at confinement for a term of twenty years and a $10,000
fine.  The trial court sentenced appellant accordingly.  We affirm.

Background

            Appellant
was indicted on three counts of aggravated sexual assault of a child (Counts I
through III) and one count of indecency with a child (Count IV).  The indictment
alleged that the offenses occurred on or about February 4, 2008.  Count I
alleged that appellant caused the sexual organ of L.T. to contact or be
penetrated by appellant’s mouth.  Count II alleged that appellant penetrated
L.T.’s sexual organ with his nose.  Count III alleged that appellant penetrated
L.T.’s sexual organ with his finger.  Count IV alleged that appellant engaged
in sexual contact with L.T. by touching her genitals.  On February 4, 2008,
L.T. was three years old.

            The
State abandoned Counts I and III at trial.  The jury acquitted appellant of the
remaining aggravated sexual assault (Count II) and convicted him of indecency
with a child (Count IV).

Issues
on Appeal

            Appellant
presents two issues for review.  In his first issue, he contends that the
evidence is factually insufficient to support his conviction for indecency with
a child.  In his second issue, he contends that the trial court erred by
instructing the jurors in its punishment charge that they could not consider
sympathy in their deliberations.

Sufficiency
of the Evidence Standard of Review

            Appellant
challenges only the factual sufficiency of the evidence to support his
conviction.  We note at the outset of our analysis that the Texas Court of
Criminal Appeals has now held in Brooks v. State, 323 S.W.3d 893 (Tex.
Crim. App. 2010), that there is “no meaningful distinction between the Jackson
v. Virginia[1]
legal-sufficiency standard and the Clewis[2]
factual-sufficiency standard”; that the Jackson v. Virginia standard is
the “only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt”; and that “[a]ll
other cases to the contrary, including Clewis, are overruled.”  Brooks,
323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly, a challenge to the
factual sufficiency of the evidence is no longer viable.  We also note that
appellant did not have the benefit of the opinion in Brooks when this
case was briefed.  We will review appellant’s factual sufficiency challenge
under the legal sufficiency standard set forth in Jackson v. Virginia. 
Under this standard, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307; Brooks, 323 S.W.3d at 899.

The
Evidence at Trial

            L.T.
was four years old at the time of trial.  R.T. is L.T.’s father, and B.T. is
L.T.’s mother.  In February 2008, R.T., B.T., L.T., and L.T.’s three brothers
lived in a house in McLennan County.  Appellant, who is L.T.’s uncle, lived
with them.  Appellant’s friend, Dustin Nemick, also lived with them.

            On
February 3, 2008, R.T., B.T., and their children attended a Super Bowl party at
a relative’s house.  After the party, they went home.  They arrived at their
house at about 11:00 p.m.  R.T. testified that, at about midnight, L.T.
told him that appellant had hurt her “pee-pee.”  R.T. said that he pointed to
L.T.’s vaginal area and that L.T. responded, “[Y]es, that’s what hurt[s].”  L.T.
told R.T. that appellant “put his nose on it,” “put a lady bug in it, in the
hole,” and “put his nose in the hole” and that “it hurt.”  The record shows
that L.T. called her vaginal area her “pee-pee.”  L.T. told R.T. that, when
appellant did these things to her, R.T. was at work and B.T. was taking L.T.’s
two older brothers to school.

            R.T.
told B.T. about L.T.’s outcry.  B.T. looked at L.T.’s vaginal area to see if it
was red, but B.T. did not see anything.  The next morning, B.T. called the
Advocacy Center and then took L.T. to Hillcrest Baptist Medical Center.  Peggi
Sheppard, a Sexual Assault Nurse Examiner, examined L.T.  When Sheppard asked
L.T. why her parents had brought her to the hospital, L.T. responded, “Pee-pee
hurts. [Appellant] hurt me.”  L.T. also told Sheppard that it hurt when she
urinated.  During the examination, Sheppard found chapping on the outer edges
of L.T.’s labia majora and redness on the inner aspects of her labia minora. 
Sheppard did not find any evidence of acute trauma, such as tearing, scarring,
or bleeding.

            Dr.
Ann Sims, the medical director of the Advocacy Center, reviewed photographs
that Sheppard took during her examination of L.T.  Dr. Sims testified that the
pictures did not depict any tearing or scarring that would indicate major
trauma.  Dr. Sims said that she saw a little bit of redness inside and outside L.T.’s
vagina.  She could not determine what caused the redness. She characterized
“redness” findings as generalized findings that are found “in lots of little
girls.”  Dr. Sims said that, for example, redness can be caused by using too
much soap, wearing wet or sweaty clothes, or poor hygiene.  She testified that
the redness depicted in the photographs of L.T. was not inconsistent with
possibly hundreds of different causes, including L.T.’s allegations of sexual
abuse.

            Dr.
Sims explained that no physical evidence of sexual abuse is found in ninety
percent of cases in which a child is not examined within twenty-four hours
after the sexual abuse occurred.  She said that vaginal injuries to young girls
heal very rapidly.  Dr. Sims did not believe that placing a nose between the
labia majora would cause any bleeding or tears.  

            The
panties that L.T. wore to the sexual assault examination were tested for DNA.  Blake
Goertz, the DNA section supervisor with the Department of Public Safety Crime
Laboratory in Waco, testified that he did not find any genetic material in the
panties other than that belonging to L.T.  Goertz said that he found no
evidence of biological material from appellant.

            On
February 4, 2008, after the sexual assault examination, Waco Police Sergeant
Scott Holt and a Child Protective Services caseworker interviewed appellant and
Nemick at R.T. and B.T.’s house.  After the interview, appellant and Nemick
left the house.  On February 5, 2008, Melody Zuniga, a forensic interviewer at
the Advocacy Center, interviewed L.T.  Sergeant Holt watched the interview.  Sergeant
Holt testified that L.T. did not make any allegations of sexual abuse to Zuniga
during the interview.  Sergeant Holt testified that L.T. responded to every
question with either “no” or “I don’t know.”  L.T.’s parents were not allowed
to be present during the forensic interview.  B.T. understood that L.T.
“completely shut down” when she talked to Zuniga.

            B.T.
testified that, on a later date, she heard L.T. tell a friend, “My uncle hurt
me.”  B.T. said that she pulled L.T. aside and asked her what happened.  L.T.
told B.T. that appellant touched her on her “pee-pee” with his finger and then
told her that he loved her.

            R.T.
and B.T. saw changes in L.T.’s behavior after her outcry of sexual abuse.  R.T.
testified that L.T. became bashful for the first time.  Before her outcry, L.T.
would run around the house not wearing any clothes.  After her outcry, L.T. no
longer ran around the house without clothes, and she had to have the door
closed when she got dressed.  She often said, “Boys didn’t see girls naked.”  B.T.
testified that, after her outcry, L.T. had frequent nightmares and wanted to
sleep with R.T. and her every night.

            On
March 4, 2008, Don Marshall, an investigator with the McLennan County District
Attorney’s Office, and Sergeant Holt interviewed appellant.  Sergeant Holt
testified that appellant did not want to give a written statement.  Investigator
Marshall began the interview, and Sergeant Holt watched the interview from
outside the room.  Initially, appellant told Investigator Marshall that he gave
L.T. a “raspberry” on her stomach, and appellant denied that he put his mouth
or face anywhere near L.T.’s vaginal area.  Later, appellant told Investigator
Marshall that “[i]t could have happened” when discussing whether he put his
mouth and his face near L.T.’s vaginal area.  At one point, appellant said that
he could not remember whether it happened.  At another point, appellant said,
“I’m willing to say it did happen.”  Investigator Marshall then left the room,
and Sergeant Holt entered the room and interviewed appellant.

            Appellant
told Sergeant Holt that, one afternoon, he was at home alone with L.T. and her
younger brother.  Appellant said that the children were in a bedroom sleeping. 
Appellant heard them wake up from their nap and then went into the bedroom with
them.  At that time, the children were jumping and playing on the bed.  Appellant
told Sergeant Holt that L.T. was only wearing panties.  Appellant said that he
jumped on the bed with them and then sat in a chair by a computer that was in
the room.  He then looked at pornography on the computer.  Appellant told
Sergeant Holt that L.T. came over to the computer.  Appellant then picked her
up and flipped her onto the bed.  Appellant told Sergeant Holt that he began
giving L.T. a raspberry on her stomach area and that he could not remember
anything that happened after that.  He could not remember the “end of the
story.”  Appellant believed that he had a repressed memory.  He thought that
his nose could have come into contact with L.T.’s panty line.  Appellant asked Sergeant
Holt whether he believed in “sexual demons.”  Sergeant Holt believed that
appellant was saying that he had been taken over or possessed by sexual demons
during the incident.

            R.T.
and B.T. testified that appellant talked to them about L.T.’s sexual abuse
allegations.  In essence, appellant told R.T. and B.T. the same story about a
“raspberry” incident that he told Sergeant Holt.  

            L.T.
testified at trial.  She said that appellant never touched her “pee-pee.”

Analysis

            In
Count IV, the State charged appellant with indecency with a child under Section
21.11 of the Penal Code.  Tex. Penal Code
Ann. § 21.11 (Vernon 2011).  A person commits the offense of indecency
with a child if he engages in sexual contact with a child who is younger than
seventeen years of age.  Id. § 21.11(a)(1).  “Sexual contact” includes
the act of “any touching . . . of . . . any part of the genitals of a child” if
“committed with the intent to arouse or gratify the sexual desire of any
person.”  Id. § 21.11(c)(1).  The indictment alleged that appellant
engaged in sexual contact by touching L.T.’s genitals.

            Appellant
relies on L.T.’s denials in the forensic interview and her trial testimony that
sexual abuse occurred.  Based on these denials and the lack of physical
evidence of sexual abuse, appellant argues that the evidence is insufficient to
support his conviction.  L.T. told R.T. that appellant hurt her “pee-pee.”  She
also told R.T. that appellant put his nose “on it” and “in the hole.”  L.T.
told B.T. that appellant touched her “pee-pee” with his finger.  A child
victim’s outcry statement alone can be sufficient to sustain a conviction for a
sexual offense.  Rodriguez v. State, 819 S.W.2d 871, 873 (Tex.
Crim. App. 1991); Chavez v. State, 324 S.W.3d 785, 788 (Tex. App.—Eastland
2010, no pet.).  As the sole judge of the credibility of the witnesses, the
jury was free to believe R.T.’s and B.T.’s outcry testimony and to disbelieve
L.T.’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).  In addition to their outcry testimony, R.T. and B.T. testified about
the changes in L.T.’s behavior after her outcry.  Those changes in L.T.’s
behavior support the conclusion that L.T. had been sexually abused.  Viewing
all of the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Therefore, the evidence is sufficient to
support appellant’s conviction.  Appellant’s first issue is overruled.

Jury
Instruction

            In
his second issue, appellant argues that the jury should have been allowed to
consider sympathy for him when reaching a decision on punishment and that,
therefore, the trial court erred by instructing the jurors in the punishment
charge that they could not consider sympathy in their deliberations.  This argument
has been rejected in Texas.  Wilson v. State, 267 S.W.3d 215, 219 (Tex.
App.—Waco 2008, pet. ref’d).  A trial court need not allow jurors “to base the sentencing
decision upon the sympathy they feel for the defendant after hearing his
mitigating evidence.”  Saffle v. Parks, 494 U.S. 484, 489 (1990).  Appellant’s
second issue is overruled.  

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE 


June 2, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel[3]
consists of:  Wright, C.J.,

McCall, J., and Hill, J.[4]

 









                [1]Jackson
v. Virginia, 443 U.S. 307 (1979). 

 





                [2]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).





[3]Rick Strange, Justice, resigned effective April 17,
2011.  The justice position is vacant pending appointment of a successor by the
governor.





 

[4]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.