# NO. 12-16-00105-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SAMUEL JOEL ESPARZA,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Samuel Joel Esparza appeals from his conviction for aggravated sexual assault of a child. In one issue, he challenges the legal sufficiency of the evidence. We affirm.

## BACKGROUND

The State charged Appellant with aggravated sexual assault of S.B., a child. Appellant pleaded "not guilty" to the charged offense.

At trial, Y.B., S.B.'s mother, testified that she and Appellant once lived together in Tyler at a residence that S.B. referred to as the "roach house." She and Appellant share a son. Appellant cared for the children when Y.B. worked overnight. When Appellant told her that S.B. was not sleeping, Y.B. questioned S.B. In response, S.B. told her that Appellant put his "wiener" in her. Y.B. testified that S.B. laughed about it and she did not believe S.B. When Y.B. questioned Appellant about the allegations, Appellant became upset.

Y.B. testified that, after they moved to a new house, Appellant was under the influence of K2 when he confessed to touching S.B. When Y.B. inquired further, Appellant repeated the confession. Y.B. asked S.B. if Appellant had been touching her. S.B. replied, "No, but remember what happened at the roach house?" Y.B. testified that Appellant's sister forced her to take S.B. to the emergency room two or three days later. She still disbelieved S.B.'s allegations.

However, Sergeant Bryan Bulman with the Tyler Police Department testified that he has never known of someone under the influence of K2 to spontaneously confess to sexual abuse of a child. He had no experience with individuals hallucinating about the past; rather, people under the influence usually hallucinate about present events.

Dr. Francisco Gonzalez testified that S.B. was eight years old when Y.B. brought her to the emergency room in August of 2015. He testified that Y.B. suspected that S.B. had been sexually assaulted. Chief investigator Victor Smith with the Leon County Sheriff's Office testified that the sheriff's office received a telephone call from the emergency room regarding an outcry of sexual assault. Leon County subsequently transferred the case to Smith County when investigators determined that the offense had occurred in Smith County. Jean Long with the Texas Department of Family and Protective Services testified that she developed a safety plan that required Appellant to leave the home and have no contact with S.B. or her brother during the investigation.

Cameron Collins, a forensic interviewer with Scotty's House Child Advocacy Center, testified that during an interview, S.B. did not disclose any sexual abuse. She described S.B. as withdrawn, closed off, and nervous. She testified that S.B. would not promise to be truthful, and that she kept looking at the cameras in the interview room. Collins could not say that there had been any coaching or fabrication of S.B. at the time of the interview.

Detective Jennifer Stockwell with the Smith County Sheriff's Department testified that, during a recorded interview, Y.B. stated that S.B. claimed she and Appellant played "doctor" and that Appellant "put his thing inside" her. Y.B. told Stockwell that she believed S.B. Jane Riley, a pediatric nurse practitioner, testified that she examined S.B. During the exam, S.B. stated that something "bad" happened. Initially, S.B. said she did not remember. She eventually told Riley that Appellant did "bad stuff" and "put his tee tee in [her] private." She told Riley that something "whitish" came out and went in her "tee tee," which Riley testified was not normal information for a child to know. S.B. also told Riley that Appellant touched her "tee tee," put his "tee tee" in her bottom, and spanked her. She told Riley that Appellant instructed her not to tell anyone. Riley explained that a child should not understand concepts such as those S.B. communicated. Although Riley found no physical evidence of abuse, she testified that she did not expect to find such evidence because of the delayed outcry. She testified that she believed

2

S.B.'s account of the abuse. Long testified that, at the conclusion of her investigation, she determined that there was reason to believe that Appellant sexually assaulted S.B.

Collins and Detective Stockwell both testified that they know of cases in which a child did not outcry during a CAC interview, but it was later discovered that abuse did occur. Collins explained that when a child's abuser resides in the child's home, the child may be more hesitant to disclose abuse and may deny the abuse or recant. She also testified that a child is likely to recant when they "remain in an unsupported environment with a nonbelieving caregiver." Riley felt that children are more comfortable disclosing abuse to medical personnel because they have experience with doctors and feel they can be trusted. Collins testified that the courtroom is not a child friendly environment, and it is less likely that a child will disclose abuse in court than in a CAC interview or a doctor's office.

Y.B. testified that, at the time of trial, she did not believe that any abuse had occurred. She spoke to Appellant almost daily, and planned to reside with him after trial. She admitted that Appellant asked her to tell the "authorities" that what he had said about touching S.B. was wrong. According to Y.B., Appellant did not recall saying that he had touched S.B. He also told Y.B. that she "screwed things up" by telling his sister about the allegations. She testified that Appellant does not want to "take blame." She admitted that, during other conversations, Appellant told her that she and S.B. needed to say the opposite of what has been "going on" and that he felt the investigator might try to manipulate S.B. He also told her to tell S.B. to answer yes or no. He expressed feeling that S.B. had been forced to lie or that someone else was lying. He also told Y.B. to make sure that S.B. said "everything correctly." Y.B. testified that Appellant wanted S.B. to tell the truth.

S.B. testified that no one had ever touched her private parts. She acknowledged that Appellant played "doctor" with her when Y.B. was at work, and that "[h]e was only playing." She denied that Appellant used his private parts or hers while playing. She testified that she felt "bad" when Appellant played "doctor." She remembered telling Y.B. that Appellant had put his "thing" inside her, but she claimed that she was not truthful at that time. She did not recall telling Riley about the abuse. She testified that no one told her what to say at trial, but she did not know if anyone had ever talked to her about what to say.

At the conclusion of trial, the jury found Appellant guilty of aggravated sexual assault of a child. The trial court sentenced Appellant to life in prison. This appeal followed.

In his sole issue, Appellant contends that the evidence is legally insufficient to support his conviction for aggravated sexual assault of a child. According to Appellant, S.B. recanted, and the remaining evidence raises nothing more than a suspicion that an offense occurred.

**Standard of Review**

When reviewing the sufficiency of the evidence, we determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*. We give deference to the jury's responsibility to fairly resolve evidentiary conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Id*.

**Analysis**

The indictment alleged that Appellant committed aggravated sexual assault by intentionally and knowingly causing the contact and penetration of S.B.'s sexual organ by his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2016). The jury heard testimony that S.B. told Y.B. that Appellant put his "wiener" in S.B. and that Appellant confessed to touching S.B. Detective Stockwell testified that Y.B. told her that Appellant played "doctor" with S.B. and "put his thing inside" S.B. Riley testified that S.B. told her that Appellant "put his tee tee in [her] private" and something "whitish" came out. The jury heard Riley explain that a child should not understand these concepts. She and Detective Stockwell both believed S.B. Additionally, Long testified that there was reason to believe that Appellant sexually assaulted S.B.

The jury also heard S.B. testify that no one ever touched her privates, but she felt "bad" when Appellant played "doctor" with her. She testified to being untruthful when she claimed that Appellant had penetrated her. However, the jury also heard Collins explain why a child may hesitate to disclose abuse or recant allegations, and that a child is less likely to disclose abuse in court. She and Riley both felt that a child is more likely to disclose abuse to a medical professional, as S.B. did in this case. Additionally, the jury heard evidence suggesting that Y.B. and Appellant may have at least attempted to influence S.B.'s testimony.

As sole judge of the weight and credibility of the evidence, the jury bore the responsibility of resolving any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 13. In doing so, the jury was entitled to credit testimony that Appellant sexually assaulted S.B. and to disbelieve S.B.'s recantation. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating that when a complainant recants, the factfinder is responsible for determining which evidence to believe); *see also Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.— Eastland 2010, no pet.) (holding evidence sufficient despite recantations of mother and complainant). Accordingly, the jury could reasonably conclude, beyond a reasonable doubt, that Appellant intentionally and knowingly caused the contact and penetration of S.B.'s sexual organ by his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i); *see also Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 13. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support Appellant's conviction for aggravated sexual assault of a child. *See Brooks*, 323 S.W.3d at 899. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered March 15, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 15, 2017**

**NO. 12-16-00105-CR**

**SAMUEL JOEL ESPARZA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1545-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*